Mr. John D. Cassels, Jr. Okeechobee County Attorney Post Office Box 968 Okeechobee, Florida 34972
Dear Mr. Cassels:
You ask substantially the following question:
Does section 381.00896, Florida Statutes, limit the county's authority to enact zoning regulations that may affect the placement of migrant farmworker housing facilities in residential areas?
In sum:
While section 381.00896, Florida Statutes, does not preclude a county from lawfully enacting and enforcing zoning regulations affecting the placement of migrant farmworker housing facilities in residential areas, the county's zoning laws may not prohibit or discriminate against the development of such housing and the zoning laws must be applied in a manner to ensure that there is sufficient housing to meet local needs.
Section 381.00896, Florida Statutes, sets forth a legislative policy of nondiscrimination in the development and use of migrant farmworker housing[1] in this state. The Legislature has made it clear that each county and municipality "must permit and encourage the development and use of a sufficient number and sufficient types of farmworker housing facilities to meet local needs."[2]
The statute states, however, that "[a] municipality or county may not enact or administer local land use ordinances to prohibit or discriminate against the development and use of farmworker housing facilities because of the occupation, race, sex, color, religion, national origin, or income of the intended residents."[3] Section381.00896(4), Florida Statutes, states "[t]his section does not prohibit the imposition of local property taxes, water service and garbage collection fees, normal inspection fees, local bond assessments, or other fees, charges, or assessments to which other dwellings of the same type in the same zone are subject." (emphasis supplied)
Section 125.01, Florida Statutes, sets forth the powers and duties of the governing body of a noncharter county and bestows on such body "the power to carry on county government."[4] To the extent not inconsistent with general or special law, this power includes but is not limited to the power to "[e]stablish, coordinate, and enforce zoning and such business regulations as are necessary for the protection of the public."[5] Section 125.01(1)(t), Florida Statutes, empowers the county to "[a]dopt ordinances and resolutions necessary for the exercise of its powers" and paragraph (w) of this subsection provides that a county has the power to "[p]erform any other acts not inconsistent with law, which acts are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law." The powers and duties set forth in section 125.01(1), Florida Statutes, are to be liberally construed "to effectively carry out the purpose of this section and to secure for the counties the broad exercise of home rule powers authorized by the State Constitution."[6] Thus, a county's authority to zone land for a particular use may not contravene state law.
A review of the legislative history surrounding the passage of section 381.00896, Florida Statutes, shows as its goal the prohibition of discrimination against the development and use of farmworker housing facilities within their jurisdictions because of the lawful occupation, race, sex, color, religion, national origin, or income of the intended residents.[7] While the terms of the section must be interpreted in a manner that will carry out the Legislature's intent, it does not appear that the plain language of section 381.00896, Florida Statutes, or any other construction gleaned from its legislative history would prohibit a county from lawfully exercising its zoning authority and enforcing its zoning regulations such that migrant farmworker housing facilities could be located only in areas where zoning permitted such use. Had the Legislature wished to grant a blanket exemption to the placement of migrant farmworker housing facilities, it could easily have done so.[8]
Section 381.00896, Florida Statutes, would preclude a county from enacting zoning regulations that do not permit and encourage the development and use of sufficient numbers and types of farmworker facilities to meet local needs. Section 381.008(8), Florida Statutes (1998 Supplement), defines "Residential migrant housing" to mean "[a] building, structure, mobile home, barracks, or dormitory, and any combination thereof on adjacent property which is under the same ownership, management, or control, and the land appertaining thereto, that is rented or reserved for occupancy by five or more migrant farmworkers[.]" A "Migrant labor camp" is defined to mean one or more structures established or furnished as an incident of employment as living quarters for migrant farmworkers. In light of these definitions, a county would be precluded from enacting zoning regulations that disallowed such accommodations in areas that otherwise allowed such occupancy, such as multiple-family dwellings or commercial lodging establishments, or did not recognize such accommodations in any of its classifications.
It is my opinion, therefore, that section 381.00896, Florida Statutes, does not preclude a county from lawfully enacting and enforcing zoning regulations that may affect the placement of migrant farmworker housing facilities in residential areas, if the county's zoning laws do not otherwise prohibit or discriminate against the development of such housing and there is sufficient housing to meet local needs.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 381.008(8), Fla. Stat. (1998 Supp.), defines "Residential migrant housing" to mean:
"A building, structure, mobile home, barracks, or dormitory, and any combination thereof on adjacent property which is under the same ownership, management, or control, and the land appertaining thereto, that is rented or reserved for occupancy by five or more migrant farmworkers, except:
(a) Housing furnished as an incident of employment.
(b) A single-family residence or mobile home dwelling unit that is not under the same ownership, management, or control as other farmworker housing to which it is adjacent or contiguous.
(c) A hotel, motel, or resort condominium, as defined in chapter 509, that is furnished for transient occupancy.
(d) Any housing owned or operated by a public housing authority except for housing which is specifically provided for persons whose principal income is derived from agriculture."
A "Migrant labor camp" is defined in s. 381.008(5), Fla. Stat. (1998 Supp.), as:
"One or more buildings, structures, barracks, or dormitories, and the land appertaining thereto, constructed, established, operated, or furnished as an incident of employment as living quarters for seasonal or migrant farmworkers whether or not rent is paid or reserved in connection with the use or occupancy of such premises. The term does not include a single-family residence that is occupied by a single family."
[2] Section 381.00896(1), Fla. Stat.
[3] Section 381.00896(3), Fla. Stat.
[4] Section 125.01(1), Fla. Stat.
[5] Section 125.01(1)(h), Fla. Stat.
[6] Section 125.01(3)(b), Fla. Stat.
[7] Final Bill Analysis Economic Impact Statement, HB 2183 (failed to pass the Legislature, but companion bill CS/SB 166 passed) House of Representatives Committee on Business and Professional Regulation, April 23, 1993.
[8] Cf., s. 125.0109, Fla. Stat., providing:
"The operation of a residence as a family day care home, as defined by law, registered or licensed with the Department of Health and Rehabilitative Services shall constitute a valid residential use for purposes of any local zoning regulations, and no such regulation shall require the owner or operator of such family day care home to obtain any special exemption or use permit or waiver, or to pay any special fee in excess of $50, to operate in an area zoned for residential use."